OA 91   Criminal Complaint

# United States District Court

NORTHERN DISTRICT OF CAILFORNIA

UNITED STATES OF AMERICA
V.
DOMINIC SMITH

**FILED**
JUL 11 2007
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

(Name and Address of Defendant)

CRIMINAL COMPLAINT

Case Number: **4·07-70414**

[Filed Under Seal]

WDB

I, the undersigned complainant being duly sworn state that the following is true and correct to the best of my knowledge and belief. On or about 12/8/06, 1/25/07, 2/8/07 (Date) in Alameda County, in the NORTHERN District of CALIFORNIA defendant(s) did,

(Track Statutory Language of Offense)
OFFENSES: SEE ATTACHMENT A

in violation of Title 21 U.S.C. United States Code, Section(s) 841 (a)(1)
I further state that I am a(n) Special Agent Robert Tucker (Official Title) and that this complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT

PENALTIES: SEE ATTACHMENT A

"NO BAIL" ARREST WARRANT REQUESTED

Continued on the attached sheet and made a part hereof:  ☒ Yes   ☐ No

Approved As To Form: DEBORAH R. DOUGLAS
AUSA

_[signature]_
Name/Signature of Complainant

Sworn to before me and subscribed in my presence,

7-11-07
Date

at San Francisco, CA
City and State

James E. Larson, U.S. Magistrate Judge
Name & Title of Judicial Officer

_[signature]_
Signature of Judicial Officer

Document No.
District Court
Criminal Case Processing

# ATTACHMENT A: OFFENSES AND PENALTIES

Count One: 21 U.S.C. § 841(a)(1) [Possession with Intent to Distribute Crack Cocaine]

On or about February 8, 2007, in the Northern District of California, the defendant, DOMINIC SMITH, did knowingly and intentionally possess with intent to distribute a Schedule II controlled substance, to wit: 5 grams or more of a mixture and substance containing a detectable amount of cocaine base in the form of "crack" cocaine, in violation of Title 21, United States Code, Section 841(a)(1).

Penalties: Mandatory minimum prison term of five years and up to 40 years, a term of supervised release of at least four years and up to life, $2 million fine, and $100 special assessment.

Count Two: 21 U.S.C. § 841(a)(1) [Possession with Intent to Distribute Crack Cocaine]

On or about January 25, 2007, in the Northern District of California, the defendant, DOMINIC SMITH, did knowingly and intentionally possess with intent to distribute a Schedule II controlled substance, to wit: a mixture and substance containing a detectable amount of cocaine base in the form of "crack" cocaine, in violation of Title 21, United States Code, Section 841(a)(1).

Penalties: Maximum prison term of twenty years, a term of supervised release of at least three years and up to life, $1 million fine, and $100 special assessment.

Count Three: 21 U.S.C. § 841(a)(1) [Possession with Intent to Distribute Crack Cocaine]

On or about December 8, 2006, in the Northern District of California, the defendant, DOMINIC SMITH, did knowingly and intentionally possess with intent to distribute a Schedule II controlled substance, to wit: a mixture and substance containing a detectable amount of cocaine base in the form of "crack" cocaine, in violation of Title 21, United States Code, Section 841(a)(1).

Penalties: Maximum prison term of twenty years, a term of supervised release of at least three years and up to life, $1 million fine, and $100 special assessment.

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINTS

I, ROBERT C. TUCKER, being duly sworn, state as follows:

### I. AGENT'S BACKGROUND AND EXPERIENCE

1. I have been employed as a Special Agent for the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") since June 1999. I am a graduate of the Federal Law Enforcement Training Center Criminal Investigator Course, ATF Academy Training Course, and the Firearms Interstate Nexus Training Course. I have had extensive training and experience in conducting criminal investigations involving violations of federal firearms and explosives laws. I am also an Interstate Nexus Expert qualified to determine whether firearms and/or ammunition have traveled in interstate or foreign commerce. In addition, I have been an undercover narcotics agent on several occasions in the last few years, including in a federal narcotics case.

2. The information contained in this affidavit is known to me as a result of my personal participation in this investigation or was related to me by a confidential informant and other law enforcement officers; physical surveillance; videotaped surveillance; recorded audio conversations; and various records. This affidavit is intended to show that there is probable cause for issuance of the criminal complaints and does not purport to set forth all of the evidence gathered to date in this investigation.

3. A confidential informant ("CI") has provided reliable information to law enforcement and has participated in this investigation. The CI has received cash payments for his cooperation. In 2003, this affiant was introduced to the CI by Oakland police officers, who described the CI as reliable. I have worked with the CI in four investigations, including two federal narcotic investigations, and have found the CI to be reliable based upon my own experience. In a prior federal narcotics investigation (resulting in a successful prosecution), the CI introduced this affiant, acting as an undercover narcotics agent, to drug dealers. Since 2003, this affiant has maintained contact with the CI and has passed information provided by the CI to other law enforcement agencies. The CI has felony convictions for receiving stolen property (1980), possession of controlled substance (1991), escape (1991), and drug-trafficking (1996). The CI has misdemeanor convictions for carrying a concealed weapon (1984), disturbing the peace (1986), battery (1987), second-degree burglary (1993), petty theft (1996), spousal abuse (1997), and driving on a suspended license (2003).

4. Information provided by the CI in this investigation has been corroborated by videotaped surveillance and recorded audio conversations. The CI was equipped with a wire, digital voice recorder, and video recorder. The CI was also provided with pre-recorded buy money. Prior to each transaction, ATF agents searched the CI and the ATF undercover vehicle to ensure that the CI did not possess any controlled substances or firearms. ATF surveillance units were placed in pre-determined surveillance positions.

5. In November 2006, the CI provided information to this affiant that "Lone Tone," later identified as Anthony P. Johnson, and "Gino," later identified as Eugene Holmes, were selling

unregistered firearms and narcotics the area of 75th Avenue and Bancroft Avenue in Oakland. This is a high-crime area known for narcotics-trafficking and illegal possession of firearms. The CI described "Lone Tone" as a black male, approximately 6' 2" to 6' 4", 185 to 190 lbs, early 40's. The CI stated that "Lone Tone" is an owner of a night club in Oakland called "Simone" and is selling firearms/narcotics from that location. The CI stated that "Lone Tone" is the "big player" [meaning major drug dealer] and that "Lone Tone" uses a street-level guy named "Gino," who also sells firearms and narcotics. The CI described "Gino" as a black male, approximately 5'10" to 6' 1", 200 lbs. The CI provided an address where "Gino" is residing: 2519 75th Avenue, Oakland, California. In addition, the CI provided "Gino's" cell phone number. The CI stated that "Gino" is selling firearms and narcotics out of that residence.

6. On December 8, 2006, at approximately 4:45 p.m., in front of the residence at 2519 75th Avenue, the CI engaged in conversation with "Dom," later identified as Dominic Smith, about purchasing firearms and narcotics from him. The CI purchased two bags of crack cocaine from "Dom" for $60.00. A DEA laboratory analysis confirmed that the net weight of the crack cocaine is 1.9 grams.

7. A few minutes after the CI purchased crack cocaine from Dominic Smith on December 8, 2006, the CI engaged in conversation with FNU LNU (aka "Black") outside the residence at 2519 75th Avenue. The CI told "Black" that he needed an automatic firearm and he needed it soon. "Black" stated that he had two big guns for $700.00 each. The CI responded that he would get them [the two firearms] from "Black" the next time and asked for a contact number, which "Black" provided. The CI described "Black" as a black male, approximately 6' to 6'1", 195-200 lbs, early 40's. Black's identity has not yet been determined.

8. Shortly after the CI's conversation with "Black" on December 8, 2006, the CI, while still outside the residence at 2519 75th Avenue, purchased one small bundle of paper containing crack cocaine from Eugene Holmes for $100.00. A DEA laboratory analysis confirmed that the net weight of the crack cocaine is 2.4 grams.

9. On December 21, 2006, at approximately 4:45 p.m., the CI purchased one bag of crack cocaine from Eugene Holmes for $240.00 outside the residence at 2519 75th Avenue. A DEA laboratory analysis confirmed that the net weight of the crack cocaine is 9.4 grams.

10. On January 16, 2007, at approximately 1:15 p.m., the CI, under ATF's supervision, placed a recorded phone call to Eugene Holmes to arrange for the purchase of firearms and narcotics on January 18, 2007. On January 18, 2007, at approximately 10:40 a.m., the CI met Holmes outside the residence at 2519 75th Avenue. As depicted on the videotape, Holmes went inside the upper level of the residence of 2519 75th Avenue. Upon returning outside, Holmes handed the CI one bag of crack cocaine with additional pieces of crack cocaine, which the CI purchased for $140.00. A DEA laboratory analysis confirmed that the net weight of the crack cocaine is 3.5 grams.

11. On January 25, 2007, at approximately 12:30 p.m., the CI engaged in conversation with Dominic Smith in front of the residence at 2522 75th Avenue, Oakland. The CI inquired about purchasing narcotics from Dominic Smith, after which Smith went into the residence at 2522 75th Avenue. Upon his return outside, Smith handed the CI two small bags of crack cocaine, which the CI purchased for $60.00. A DEA laboratory analysis confirmed that the net weight of the crack cocaine is 1.9 grams.

12. After purchasing crack cocaine from Dominic Smith on January 25, 2007, the CI went across the street to the residence at 2519 75th Avenue. Eugene Holmes allowed the CI to enter the residence through the door on the ground level of 2519 75th Avenue. While inside the residence, the CI engaged in conversation with Holmes and FNU LNU (aka "Black") about purchasing firearms. Holmes told the CI that he (Holmes) would have "something" [meaning a firearm] in approximately three days.

13. On February 8, 2007, at approximately 12:20 p.m., the CI arrived outside the residence at 2519 75th Avenue, and engaged in conversation with a black male, later identified as Keith Lamont Smith, about purchasing firearms. Keith Lamont Smith stated that he (Smith) had a .357 and asked if the CI had money. The CI followed Keith Lamont Smith across the street to the residence at 2522 75th Avenue, where the CI had purchased crack cocaine from Dominic Smith on January 25, 2007. Keith Lamont Smith told the CI to come into the house. While the CI was waiting inside the residence, Dominic Smith came out from the back area of the residence and approached the CI. The CI and Dominic Smith engaged in a conversation about the purchase of crack cocaine. A couple of minutes later, Keith Lamont Smith returned from the back area of the residence and handed the CI a .357 Magnum revolver in exchange for $300.00. Keith Lamont Smith then left the residence. In the videotape, Dominic Smith is seen in the kitchen area holding up and waving what appears to be plastic bag. The CI purchased the plastic bag containing crack cocaine from Dominic Smith for $150.00. A DEA laboratory analysis confirmed that the net weight of the crack cocaine is 5.7 grams.

14. On February 9, 2007, this affiant showed the CI two different photo arrays. The CI positively identified Keith Lamont Smith and Dominic Smith. A criminal history check revealed that Keith Lamont Smith has a previous felony conviction and that Dominic Smith has previous felony convictions. This affiant obtained and reviewed certified copies of the Smiths' felony convictions, which confirm as follows: On or about April 26, 2004, Keith Lamont Smith was convicted in the Superior Court of Alameda County for Possession of Concentrated Cannabis, a violation of Health & Safety Code § 11357(a). On or about October 28, 2003 Dominic Smith was convicted in the Superior Court of Alameda County for Possession/Purchase for Sale of Narcotics/Controlled Substance, in violation of Health and Safety Code §11351; and Transport/Sell of Narcotics/Controlled Substance, in violation of Health and Safety Code §11352 (a). On or about March 6, 2006, Dominic Smith was convicted in the Superior Court of Alameda County for Possession/Purchase of Cocaine Base, in violation of Health and Safety Code §11351.5.

15. On February 12, 2007, this affiant, who is also an Interstate Nexus Expert, examined the .357 Magnum revolver, which the CI had purchased from Keith Lamont Smith on February 8, 2007. This affiant determined that the firearm., specifically, a Ruger, Model SP101, .357 Magnum caliber, serial no. 571-05140, had been manufactured in the State of Connecticut and thus had traveled in interstate commerce.

16. On March 1, 2007, at approximately 1:25 p.m., Eugene Holmes allowed the CI to enter the ground level of the residence at 2519 75th Avenue. While inside the residence, the CI purchased one plastic bag of crack cocaine from Holmes for $530.00. The CI informed this affiant that, during the drug transaction, a Nickel-plated pistol was in plain view on a milk carton-type of box within hands' reach of Holmes. The CI attempted to purchase the firearm for $500.00, but Holmes would not sell it. A DEA laboratory analysis confirmed that the net weight of the crack cocaine is 17.9 grams.

17. On March 8, 2007, at approximately 12:25 p.m., Eugene Holmes allowed the CI to enter the ground level of the residence at 2519 75th Avenue. While inside the residence, the CI and Holmes engaged in conversation about firearms and crack cocaine. The CI purchased two ounces of crack cocaine from Holmes for $1,100.00. The CI informed this affiant that the same Nickel-plated pistol that the CI had observed on March 1, 2007 was still in plain view and within Holmes' reach during the drug transaction on March 8, 2007. A DEA laboratory analysis confirmed that the net weight of the crack cocaine is 36.4 grams.

18. This affiant obtained and reviewed certified copies of the Eugene Holmes' felony convictions, which confirm as follows: On or about October 23, 2003, Holmes was convicted in the Superior Court of Alameda County for Transport/Sell of Narcotics/Controlled Substance, in violation of Health and Safety Code §11352 (a). On or about October 12, 1994, Holmes was convicted in the Superior Court of Alameda County for Transport/Sell of Narcotics/Controlled Substance, in violation of Health and Safety Code §11352 (a).

19. On March 22, 2007, at approximately 4:55 p.m., the CI parked in front of the residence at 2522 75th Avenue. The CI got out of the vehicle and observed Keith Lamont Smith walking towards the CI. The CI and Smith engaged in conversation about firearms and narcotics. Smith walked to a nearby apartment complex (only two buildings from 2522 75th Avenue) and, a few minutes later, returned and handed the CI a plastic bag containing approximately 1 ounce of powdered cocaine. The CI purchased the powdered cocaine from Smith for $600.00. A DEA laboratory analysis confirmed that the net weight of the powdered cocaine is 25 grams.

20. On March 29, 2007, the CI called Keith Lamont Smith to arrange for a meeting. On that same day, at approximately 5:45 p.m., the CI parked in front of the residence at 2522 75th Avenue and Smith and the CI discussed firearms and narcotics. Smith walked to the same nearby apartment complex (where Smith had obtained powdered cocaine on March 22, 2007). Shortly thereafter, Smith returned to the front of 2522 75th Avenue and handed the CI approximately two ounces of

crack cocaine in exchange for $1,160.00. A DEA laboratory analysis confirmed that the net weight of the crack cocaine is 46.4 grams.

21. On April 30, 2007, at approximately 3 p.m., the CI met Keith Lamont Smith in front of the residence at 2522 75th Avenue. Smith sent an unknown black male to the same apartment complex (as on 3/22/07 and 3/29/07). The unknown black male returned to 2522 75th Avenue with crack cocaine, which Smith handed to the CI in exchange for $840.00. A DEA laboratory analysis confirmed that the net weight of the crack cocaine is 21.9 grams.

22. On May 7, 2007, the CI positively identified Anthony Johnson ("Lone Tone") from a photo array. A criminal history check revealed that Johnson has prior felony convictions. This affiant has obtained and reviewed certified copies of Anthony Johnson's felony convictions, which confirm as follows: On or about July 8, 1986, Johnson was convicted in the Superior Court of Alameda County for Transport/Sale Narcotics/Controlled Substance (Marijuana), in violation of Health & Safety Code § 11360(a). On or about January 22, 1993, Johnson was convicted in the Superior Court of Alameda County of Possession/Purchase of Cocaine Base for Sale, in violation of Health & Safety Code § 11351.5.

23. On May 8, 2007, the CI, under ATF's supervision, engaged in a recorded conversation with Anthony Johnson about purchasing firearms and narcotics. The CI and Johnson arranged for a meeting at the Taco Bell Restaurant parking lot in the area of 72nd Avenue and Bancroft in Oakland on May 9, 2007.

24. On May 9, 2007, at approximately 11:30 a.m., the CI arrived at the Taco Bell Restaurant parking lot. At approximately 12:15 p.m., Anthony Johnson, accompanied by an unknown black male passenger, arrived in a Honda Civic, CA license plate no. 5SZV841. Johnson got out of his vehicle, walked over and entered the ATF undercover vehicle, and engaged in conversation with the CI about selling two ounces of crack cocaine. In sum and substance, the CI told Johnson that the CI had recently been overcharged by drug dealers. In sum and substance, Johnson responded that his drugs were good and that the CI could go home right now and weigh them – they are "56" [meaning two ounces of crack cocaine, 28 grams per ounce]. Johnson handed the CI two ounces of crack cocaine in exchange for $1,400.00. A DEA laboratory analysis confirmed that the net weight of the crack cocaine is 43.3 grams.

25. On June 28, 2007, at approximately 12:15 p.m., the CI arrived at the Taco Bell Restaurant parking lot in the area of 72nd Avenue and Bancroft in Oakland. At approximately 12:35 p.m., Anthony Johnson arrived at the Taco Bell driving a tan Buick, CA license plate no. 3XVD558. The CI approached Johnson's vehicle and engaged in conversation with Johnson about purchasing two ounces of crack cocaine. While standing outside of Johnson's vehicle, the CI purchased two ounces of crack cocaine from Johnson for $1,400.00. A DEA laboratory analysis confirmed that the net weight of the crack cocaine is 52.3 grams.

26. Because this investigation is continuing, disclosure of the criminal complaints, arrest warrants, and affidavit will jeopardize the ongoing investigation. Accordingly, I respectfully request that the criminal complaints, arrest warrants, and affidavit be sealed until further order of this Court.

I declare under the penalty of perjury that the above statements are true and accurate to the best of my knowledge and belief.

_____
ROBERT C. TUCKER
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn before me on this 11th day of July 2007 at San Francisco, CA.

_____
HONORABLE JAMES L. LARSON
United States Magistrate Judge